# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JULIE SOWELL, *et al.*,
    *Plaintiff*,

v.

SOUTHBURY-MIDDLEBURY YOUTH
AND FAMILY SERVICES, INC. *et al.*,
    *Defendants*.

No. 3:18-cv-01652 (JAM)

## ORDER RE MOTIONS TO DISMISS

    For many years now, the Supreme Court has made clear by means of a rule known as the *Rooker-Feldman* doctrine that the federal district courts do not have a general or roving authority to sit in appellate review of state court judgments. Still, federal district courts are regularly asked to do just that—almost always at the behest of *pro se* litigants who do not know better.

    This case is different. A *trained lawyer* has chosen to file a lawsuit that over and over again explicitly asks me to review and reverse settled judgments issued by the Connecticut Appellate Court and the Connecticut Supreme Court. Indeed, he has sued many of the judges and opposing lawyers who were involved with the prior state court judgments, apparently thinking that I can force the judges to "undo" their prior rulings and that I can force the lawyers to fork over money damages for the "wrongs" they did by making winning arguments in the Connecticut state courts. But of course I cannot do that consistent with the *Rooker-Feldman* doctrine.

    Plaintiffs Julie Sowell and George Mendillo have filed this federal lawsuit seeking to challenge prior Connecticut state court judgments and to challenge the constitutional validity of certain state court rules that were involved or implicated in the prior state court litigation. I conclude that their claims are mostly barred by the *Rooker-Feldman* doctrine and that, to the

1

extent that the *Rooker-Feldman* doctrine does not apply, plaintiffs lack standing to pursue their challenges to the state court rules. Accordingly, I will dismiss their complaint.

## BACKGROUND

This case involves years of state court litigation before its arrival here in federal court. Unless otherwise noted, the background facts recited below are drawn from the facts as stated in the opinions of the Connecticut Appellate Court in *Sowell v. DiCara*, 161 Conn. App. 102, *cert. denied*, 320 Conn. 909 (2015), and the Connecticut Supreme Court in *Mendillo v. Tinley, Renehan & Dost LLP*, 329 Conn. 515 (2018).

### *The initial state court action*

The litigation began in 2012 when Sowell filed an employment-related lawsuit in the Connecticut Superior Court against her former employer, Southbury-Middlebury Youth and Family Services, Inc. ("YFS"). Sowell was represented in that lawsuit by Mendillo, who is an attorney and also her brother. YFS was represented by counsel from the law firm of Tinley, Renehan & Dost LLP, including attorneys Jeffrey Tinley and John Majewski.

After YFS filed a counterclaim against Sowell, Mendillo responded by sending an unsolicited letter to individual members of the YFS board. The letter contended in relevant part that YFS's counterclaim was "false and libelous and made with malice," that it "must be withdrawn immediately," and that the board members could face personal liability. *Sowell*, 161 Conn. App. at 108 n.5.

The Tinley firm objected that the letter was a violation of Rule 4.2 of the Connecticut Rules of Professional Conduct. This rule provides in relevant part that "in representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the

2

other lawyer or is authorized by law to do so." Conn. R. Prof. Cond. 4.2. The commentary to the rule states that "[i]n the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization . . . ." *Ibid.* (commentary).

YFS moved for a protective order to prohibit Mendillo from further violations of Rule 4.2. The state trial court granted the protective order after a hearing. Although it concluded that Mendillo had violated Rule 4.2, it did not otherwise impose any sanctions.

### ***The appeal from the protective order and Appellate Court decision***

Mendillo sought to challenge the protective order by filing a petition for writ of error in the Connecticut Supreme Court which transferred the petition to the Connecticut Appellate Court. On November 10, 2015, the Appellate Court ruled in part that "[o]n the basis of the letters attached to the agency's motion for protective order and Mendillo's admission before the court that he sent the claim letter to the board of directors, and in light of the trial court's articulation, we conclude that there was clear and convincing evidence before the court that Mendillo violated Rule 4.2 by communicating with Tinley's clients without his permission." *Sowell*, 161 Conn. App. at 126. The Appellate Court considered at length and rejected multiple arguments made by Mendillo about why he did not violate Rule 4.2 and about why his due process rights were violated by the trial court's hearing and order. *Id.* at 126-33.

The Connecticut Appellate Court decision was written by Judge Douglas Lavine and joined by Judges Eliot Prescott and Nina Elgo. On December 16, 2015, the Connecticut Supreme Court denied Mendillo's petition for certification for appeal of the Connecticut Appellate Court's decision. *See* 320 Conn. 909.

*The denial of a writ of error by the Connecticut Supreme Court*

On February 4, 2016, Mendillo filed a writ of error in the Connecticut Supreme Court seeking to challenge the Connecticut Appellate Court's ruling. The Connecticut Supreme Court dismissed the writ on May 25, 2016, and denied reconsideration on June 27, 2016.

*The second state court action and the Connecticut Supreme Court decision*

On October 3, 2016, Mendillo filed another lawsuit in the Connecticut Superior Court, now seeking a declaratory judgment to challenge the Connecticut Appellate Court's decision on multiple grounds. *See Mendillo*, 329 Conn. at 520 (summarizing claims). Mendillo named as defendants to this new action the Tinley law firm as well as Judges Lavine, Prescott, and Elgo. The trial court dismissed the action. Mendillo then appealed the ruling, and on July 24, 2018, the Connecticut Supreme Court dismissed the appeal. In an opinion written by Chief Justice Richard Robinson, the Connecticut Supreme Court concluded that the case was nonjusticiable: "We agree with the defendants that the present case is nonjusticiable because no practical relief is available to the plaintiff insofar as the allegations in the declaratory judgment complaint demonstrate that it is nothing more than a collateral attack on the protective order imposed by the trial court . . . and upheld by the Appellate Court." *Id.* at 527.

*The federal action*

Mendillo and Sowell have now filed this federal lawsuit. Their amended complaint names the following defendants: Chief Justice Robinson, Judge Lavine, Judge Prescott, Judge Elgo, the Tinley law firm, and attorneys Tinley and Majewski. Doc. #27.[1]

---

[1] Plaintiffs have voluntarily dismissed their claims against three more named defendants—YFS, Mary Jane McClay, and the Philadelphia Indemnity Insurance Company. Doc. #43. Accordingly, I will deny as moot the motion to dismiss filed by Philadelphia Insurance Company. Doc. #28.

The first ten counts of the complaint seek declaratory relief pursuant to 42 U.S.C. § 1983. Counts One and Two are as-applied First Amendment challenges. They allege that the Connecticut state court's protective order and Rule 4.2 as applied by the Connecticut Appellate Court in *Sowell* violated the First Amendment rights of plaintiffs as well as the First Amendment rights of YFS board members. Doc. #27 at 23-24.

Counts Three and Four allege that Rule 4.2 is unconstitutionally overbroad and vague because it fails to define key terms that would illuminate the scope and application of the rule. Doc. #27 at 24-27. It alleges that this vagueness subjects Mendillo and other lawyers to sanctions by the courts without notice and operates as a prior on restraint on speech protected by the First Amendment. *Id.* at 27.

Counts Five through Eight allege in various ways that the Connecticut Appellate Court judges violated Mendillo's constitutional rights when they found in *Sowell* that he was in violation of Rule 4.2. Doc. #27 at 28-32. Count Five alleges that the judges exceeded their constitutional and statutory authority and obstructed his efforts to seek judicial redress in violation of his First Amendment right of access to the courts. Count Six alleges that the judges violated Mendillo's First Amendment right to free speech. Count Seven alleges that the judges violated his right to due process under the Fifth and Fourteenth Amendments by engaging in ex-post facto decision making. Count Eight alleges that the judges violated his Fourteenth Amendment right to equal protection under the laws by treating him differently from similarly-situated plaintiffs with the aim of inhibiting or punishing the exercise of his constitutional rights.

Count Nine alleges a due process challenge to Rule 72-1(b) of the Connecticut Rules of Appellate Procedure on the ground that it does not allow for adequate review by the Connecticut

Supreme Court of decisions of the Connecticut Appellate Court. *Id.* at 33-34.[2] It also challenges Connecticut's "binding precedent doctrine" as articulated by the Connecticut Supreme Court in *Mendillo*—*i.e.*, the application by Connecticut courts of the near-universal *stare decisis* rule that a trial court must follow the precedent of an appellate court. *Id.* at 34.

Count Ten alleges a violation of the Supremacy Clause of the U.S. Constitution. It alleges that the Supremacy Clause requires Connecticut state courts to exercise jurisdiction over federal law claims and deduces from this that the application of Connecticut's binding precedent doctrine as articulated by the Connecticut Supreme Court in *Mendillo* violates the Supremacy Clause. *Id.* at 35.

In contrast to the first ten counts of the amended complaint, which seek only declaratory relief, the last two counts seek money damage awards against only the Tinley firm and attorneys Tinley and Majewski. Count Eleven alleges a claim for money damages under § 1983, claiming that the law firm and lawyer defendants were responsible for seeking entry of the protective order in the *Sowell* case and for the adverse findings against Mendillo that he violated Rule 4.2. *Id.* at 36-40. Count Twelve alleges on the basis of the same facts a state law violation for abuse of process against the Tinley law firm and the two lawyer defendants.

Defendants have now moved to dismiss. They argue that the complaint should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

---

[2] Rule 72-1(b) provides in relevant part that "[n]o writ of error may be brought in any civil or criminal proceeding for the correction of any error where (1) the error might have been reviewed by process of appeal, or by way of certification." It appears that Mendillo's objection to this rule may be premised on the Connecticut Supreme Court's summary denial of his writ of error following its denial of certification to review the Appellate Court's decision in *Sowell*.

**DISCUSSION**

For purposes of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or failure to state a claim under Rule 12(b)(6), a complaint may not survive unless it alleges facts that taken as true give rise to plausible grounds to support the Court's jurisdiction and to sustain the alleged claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Moreover, because the focus must be on what actual facts a complaint alleges, a court is "not bound to accept as true a legal conclusion that is couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).[3]

### *The* Rooker-Feldman *doctrine*

Defendants argue that the Court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine—a doctrine that jurisdictionally bars the federal courts from hearing "cases that function as *de facto* appeals of state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018). The reason for the *Rooker-Feldman* rule is to respect the constitutional division of authority between the state and federal governments. If a litigant believes that a state court has not respected his federal constitutional rights, the litigant may ultimately seek review of the state court judgment in the U.S. Supreme Court. Congress did not otherwise designate the lower federal courts to sit in judgment of the state courts.

---

[3] Because Mendillo is an attorney who represents himself and his sister in this action, there is no basis to apply the usual rule of special solicitude for *pro se* litigants. *See, e.g., Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

There are four requirements that must be met in order for the *Rooker-Feldman* doctrine to bar a plaintiff's claim: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 645.

It is clear to me that the vast majority of the complaint is barred by the *Rooker-Feldman* doctrine. Page after page of the complaint assails and attacks the prior rulings of the Connecticut courts in *Sowell* and *Mendillo*. As to these allegations, there is no doubt that each one of the four requirements of the *Rooker-Feldman* doctrine has been established. First, plaintiffs lost in state court. Second, plaintiffs complain of injuries caused by one or more of the state court judgments (*e.g.*, that Mendillo's reputation has been tarnished by the judicial finding that he violated Rule 4.2 and that Sowell and Mendillo are harmed because the protective order bars them from communication with YFS board members). Third, plaintiffs seek review and rejection of the state court judgments. Lastly, all of these state court judgments were rendered before this federal lawsuit began. *See, e.g.*, *Neroni v. Zayas*, 663 F. App'x 51, 53 (2d Cir. 2016) (affirming dismissal under *Rooker-Feldman* where "[t]he record shows that [plaintiff] lost in state court, the underlying injury complained of was his disbarment, he invited federal court review of his disbarment order, and he filed his complaint after the state court order was entered").

Although it is clear that the gravamen of the entire complaint is an attack on prior state court judgments, the application of the *Rooker-Feldman* doctrine should be considered on a claim-by-claim basis. Accordingly, I will now review each of the individual counts to evaluate whether they specifically come within the scope of the *Rooker-Feldman* doctrine.

Counts One and Two allege that the state court's protective order in *Sowell* violates the First Amendment rights of plaintiffs as well as of the YFS board members. Doc. #27 at 23-24. Because these counts explicitly challenge a final state court judgment, they are plainly barred by the *Rooker-Feldman* doctrine.

Counts Three and Four allege that Rule 4.2 is unconstitutionally overbroad and vague. Doc. #27 at 24-27. I conclude that these two counts are not subject to the *Rooker-Feldman* doctrine to the extent that they seek to challenge the validity of Rule 4.2 itself, as distinct from seeking to challenge the state court's prior findings that Mendillo violated Rule 4.2 in the *Sowell v. YFS* litigation. *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (noting that under *Rooker-Feldman* doctrine, "[a] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action"); *Sung Cho*, 910 F.3d at 646 (emphasizing that *Rooker-Feldman* doctrine applies only if the claimed injury was *caused* by the state court judgment); *Mosby v. Ligon*, 418 F.3d 927, 932 (8th Cir. 2005) ("We agree that the *Rooker-Feldman* doctrine does not bar the district court from exercising jurisdiction over general challenges to the constitutionality of a State's disciplinary rules and processes.").

Counts Five and Six allege in their headings that "the appellate court judges denied Mendillo's First Amendment right of access to the courts" and "Mendillo's First Amendment right to free speech," and that "the prospective application of the *Sowell* decision will deny Mendillo and other Connecticut lawyers [their] First Amendment access to the courts" as well as "violate the free speech rights of Mendillo and other Connecticut lawyers." Doc. #27 at 28, 29 (capitalization changed to lowercase). Because both these counts are framed in a manner that

explicitly seeks the invalidation of the Appellate Court judgment in *Sowell*, they are barred by the *Rooker-Feldman* doctrine.

Counts Seven and Eight similarly allege in their headings that "the appellate court judges denied Mendillo due process of law" and "equal protection of the laws," and that "the prospective application of the *Sowell* decision" will deny the due process and equal protection rights of Mendillo and other Connecticut lawyers. Doc. #27 at 30-32 (capitalization changed to lowercase). Again, because both these counts explicitly seek the invalidation of the Appellate Court judgment in *Sowell*, they are barred by the *Rooker-Feldman* doctrine.

Counts Nine and Ten challenge Rule 72-1(b) of the Connecticut Rules of Appellate Procedure and the *stare decisis* practice of the Connecticut courts that requires trial courts to treat precedent of higher courts as binding. Doc. #27 at 33-35. To the extent that these two counts explicitly reference the Connecticut Supreme Court's decision in *Mendillo* and seek on that basis a ruling that would invalidate the Connecticut Supreme Court's prior application of Rule 72-1(b) and its *stare decisis* doctrine, Counts Nine and Ten are similarly barred by the *Rooker-Feldman* doctrine. On the other hand, to the extent that these causes of action seek more generally to challenge the constitutional validity of Rule 72-1(b) and *stare decisis* apart from how these rules were applied in the prior state court proceedings in *Sowell* and *Mendillo*, then I conclude that this aspect of Counts Nine and Ten falls outside the scope of the *Rooker-Feldman* doctrine. *See Mosby*, 418 F.3d at 932.

Lastly, Counts Eleven and Twelve—damages claims against the Tinley law firm and the two lawyer defendants—are framed again to attack the validity of the state court judgment

relating to the protective order that was issued and affirmed by the state courts in *Sowell*. Doc. #27 at 36-41. Counts Eleven and Twelve are barred by the *Rooker-Feldman* doctrine.[4]

My conclusions with respect to how the *Rooker-Feldman* doctrine applies in this case is confirmed by plaintiffs' vexing choice of defendants in this action— the chief justice of the Connecticut Supreme Court who authored the *Mendillo* decision, the three judges of the Appellate Court who decided the *Sowell* decision, and the opposition lawyers involved in the *Sowell* litigation. The fact that plaintiffs singled out these particular defendants reinforces the conclusion that what plaintiffs now seek is a federal district court judgment to annul the prior state court decisions with which each of these defendants was involved.

The fact that plaintiffs chose not to pursue in the prior state court litigation the full range of federal constitutional claims that they now allege here is irrelevant to the application of the *Rooker-Feldman* doctrine. *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005) (rejecting argument that federal plaintiff may evade *Rooker-Feldman* by raising federal claim that he failed to pursue in state court); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (*Rooker-Feldman* doctrine extends to claims inextricably intertwined with state court judgments that plaintiff could have raised in state court proceedings). Plaintiffs seek to invalidate the state court judgments all the same. They could have pursued such claims in the first instance before the state courts of Connecticut. If they were unhappy with how the state courts ruled, then they could have sought certiorari to the U.S. Supreme Court, which they did not do. What the *Rooker-Feldman* doctrine prevents is what plaintiffs seek to do here: to end-run the ordained

---

[4] In addition to being barred by the *Rooker-Feldman* doctrine, Count Eleven is subject to dismissal on grounds that it does not allege facts to plausibly establish that the Tinley law firm or the individual law firm defendants are state actors as is required to be proved for a § 1983 claim. *See Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014). Although plaintiffs claim that the law firm defendants exercised the authority of the court system when they obtained the protective order against them, an attorney's participation in the court system does not transform an attorney into a state actor for purposes of a § 1983 claim. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).

procedural pathways for seeking appellate review of state court rulings and to improperly enlist a federal district court to sit in appellate review of the judgments of the Connecticut state courts.

In short, the *Rooker-Feldman* doctrine bars Counts One, Two, Five, Six, Seven, Eight, Eleven, and Twelve. Accordingly, I will dismiss these claims for lack of subject matter jurisdiction.

*Standing*

As to the remaining claims that are not barred in their entirety by the *Rooker-Feldman* doctrine (Counts Three, Four, Nine, and Ten), I now consider whether plaintiffs have "standing" as required under the Constitution to maintain their challenges to Rule 4.2, Rule 72-1(b), and the Connecticut rule of *stare decisis*. The requirements of standing derive from Article III of the Constitution which limits the judicial power of the United States to adjudication of actual cases or controversies. In order to establish standing to maintain a claim, a plaintiff must plead facts that plausibly show that the plaintiff (1) sustained an injury-in-fact, (2) that defendant's actions caused the injury, and (3) that plaintiff's request for relief would likely redress the injury. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019). An injury-in-fact must be "concrete and particularized" as well as "actual or imminent," rather than "conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Of course, to the extent that a plaintiff's claimed injury-in-fact is solely the injury caused by a state court judgment over which the *Rooker-Feldman* doctrine otherwise prevents a federal court from reviewing, this type of injury cannot suffice to establish constitutional standing. More generally, as the U.S. Supreme Court has noted, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal citation omitted).

As to Sowell, there is no basis to conclude that she has standing to challenge any of the state rules identified in the complaint. Because the parties have advised the Court that the underlying litigation in *Sowell v. YFS* has been settled, there is no longer any reason she needs an attorney to engage in unconsented-to communications with the board members of YFS. Sowell herself is not an attorney subject to Rule 4.2. She does not allege that she has any other matters pending in the state courts of Connecticut that could be subject to a misapplication of Rule 4.2, Rule 72-1(b), or the rule of *stare decisis*. Sowell has not alleged facts sufficient to establish standing.

Because Mendillo is an attorney, it is a closer question whether he has standing to maintain a challenge to Rule 4.2, Rule 72-1(b), or the rule of *stare decisis.* Still, I conclude that he has not alleged enough facts to plausibly establish that he has standing. Other than conclusory allegations that Mendillo could be subject to future adverse effects from these rules, the complaint alleges no specific facts to suggest that he is presently or will in the future be subject to any wrongful application of these rules. For example, Mendillo does not allege that he is presently engaged in any disciplinary or other enforcement proceedings involving Rule 4.2. Nor does he allege that he has any particular pending matters involving the representation of clients in which he intends to engage in communicative conduct with another lawyer's clients that could arguably violate Rule 4.2. Similarly, he does not allege that he has any proceedings before the Connecticut courts that have triggered or would likely trigger the application of Rule 72-1(b) or the rule of *stare decisis*.

Lawyers do not have *per se* standing to challenge any court rule or doctrine of interpretation that displeases them. Like other litigants, lawyers as plaintiffs must satisfy the requirements to allege particularized, imminent, and non-conjectural injury before they may press a challenge to a court rule, even if they assert in general terms that any particular rule has a chilling effect on their rights under the First Amendment.

Indeed, as the Second Circuit has repeatedly recognized in the lawyer-plaintiff context, the fact that a lawyer-plaintiff may conclusorily claim that a rule has a chilling effect on First Amendment speech does not dispense with the constitutional baseline requirement that the lawyer-plaintiff establish an injury-in-fact. "[A]llegations of a subjective chill are generally not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 90 (2d Cir. 2010) (internal quotations omitted); *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d Cir. 2006) (same), *abrogated on other grounds by Bond v. United States*, 564 U.S. 211 (2011).

Multiple courts have otherwise recognized that, absent specific facts to suggest that a lawyer has or will engage in conduct that could likely engender proceedings for a violation of an attorney conduct rule, a lawyer does not have standing to challenge the rule even if the lawyer has previously been subject to application of that rule. *See Fieger v. Mich. Supreme Court*, 553 F.3d 955, 964-73 (6th Cir. 2009) (despite fact that lawyer had previously been subject to sanctions proceedings, lawyer did not have standing to raise First Amendment challenge to certain "courtesy" and "civility" rules of the Michigan Rules of Professional Conduct absent pending sanctions, an enforcement proceeding, or other specific facts to show lawyer's intent to engage in specific speech or conduct that would again potentially engender sanctions); *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832-35 (6th Cir. 2001) (even though lawyer had

previously been subject to Ohio Supreme Court disciplinary rule, lawyer lacked standing to maintain First Amendment or other constitutional challenge to rule in light of lack of alleged facts to plausibly establish that lawyer would be at risk of sanctions again); *Mosby*, 418 F.3d at 933-34 (attorney lacked standing to raise general facial challenge to court disciplinary rules absent allegations of their likely application to her); *Maddox v. Prudenti*, 2006 WL 8438119, at *6 (E.D.N.Y. 2006) (attorney had no standing to "raise general challenges to the Appellate Division's disciplinary rules" where "the record here does not demonstrate that he is likely to suffer from any of these alleged constitutional deficiencies in the future"), *aff'd*, 303 F. App'x 962 (2d Cir. 2008).

Similarly, to the extent that plaintiffs claim standing to pursue the rights of third parties (such as members of the YFS board of directors or other attorneys in Connecticut), plaintiffs allege no facts that would afford them standing to pursue claims on any third-party's behalf. For example, they allege no facts to show that they have a close relationship with any third party or that there is any impediment to these third parties asserting their own rights before this Court if they wish to do so. *See Campbell v. Louisiana*, 523 U.S. 392, 397 (1998); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). Although the Second Circuit has recognized that a First Amendment overbreadth challenge may allow a plaintiff to assert the interests of third parties, it has made equally clear that the plaintiff personally must have sustained an injury-in-fact before the plaintiff may press the third-party interests of others. *See, e.g, Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013). As discussed above, the complaint does not allege that plaintiffs themselves have sustained an injury-in-fact.

In short, plaintiffs have failed to allege facts to plausibly support standing to maintain their claims under Counts Three, Four, Nine, and Ten. Accordingly, I will dismiss these counts for lack of standing.[5]

## CONCLUSION

For the reasons set forth above, the Court DENIES as moot the motion to dismiss of defendant Philadelphia Insurance Company (Doc. #28) on the ground that this defendant has been voluntarily dismissed from this action. The Court GRANTS the motions to dismiss of the remaining defendants (Docs. #31, #34) on the ground that most of the claims are barred by the *Rooker-Feldman* doctrine and that plaintiffs have not alleged sufficient facts to establish standing to maintain any of the claims that are not barred by the *Rooker-Feldman* doctrine.

The Clerk of Court shall close this case. This ruling is without prejudice to plaintiffs' filing of a motion to reopen along with a proposed amended complaint on or before **September 5, 2019**, in the event that plaintiffs have a good faith basis to allege additional facts that would suffice to redress the deficiencies identified in this ruling.

It is so ordered.

Dated at New Haven this 5th day of August 2019.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge

---

[5] In light of my conclusion that the complaint must be dismissed under the *Rooker-Feldman* doctrine and for lack of standing, I need not consider whether plaintiffs' claims for declaratory relief against Chief Justice Robinson and Judges Lavine, Prescott, and Elgo are further barred by judicial immunity or otherwise fall outside the scope of allowable actions against judicial officials under § 1983. *See Sargent v. Emons*, 582 F. App'x 51, 53 (2d Cir. 2014); *McCluskey v. New York State Unified Court Sys.*, 442 F. App'x 586, 588 (2d Cir. 2011).